### SHULER et al. v. SHULER et al.

(Supreme Court, Appellate Division, Third Department. March 9, 1910.)

1. WILLS (§ 697*)—SUIT TO CONSTRUE—WHO MAY BRING.

The infant children of a deceased son, who was given a life estate in his mother's estate by her will, may sue to construe the will.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1671; Dec. Dig. § 697.*]

2. WILLS (§ 439*) — CONSTRUCTION — INTENTION OF TESTATOR — HOW ASCERTAINED.

In construing a will, the court from the will itself, and the surrounding circumstances, is charged with the duty of ascertaining the intention of the testator with reference to the disposition of his property, having in mind that he did not mean to disinherit those fairly entitled to his bounty, or to make an unjust discrimination between them, and that he probably intended to effectually dispose of all his property, and that each item of the will was probably written for a purpose.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 952; Dec. Dig. § 439.*]

3. WILLS (§ 542*)—CONTINGENCY ON WHICH ESTATE OVER TAKES EFFECT—HAPPENING OF CONTINGENCY AS TO ONE OF TWO FIRST TAKERS.

Testatrix devised her property to her two sons for life, and, on the death of either without issue at the time of his death, the property to go to the issue of the survivor; the will also providing that the sons could occupy such portion of the real estate as they should desire, and any portion not occupied was to be held in trust by the executor and the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

rent paid to the sons, share and share alike. *Held* that, upon the death of a son, his issue surviving him was vested with one-half interest in the estate: it not being presumable that testator intended that the limitation over was not to take effect until the death of both the sons.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1167; Dec. Dig. § 542.*]

4. TRUSTS (§ 11*)—PURPOSES OF TRUST—DUTIES MERELY PASSIVE.

Since the trustee was powerless to prevent the sons from occupying or using all the property, and as he could not dictate how the property should be occupied or apportioned between them, the trust was a passive or dry trust, and without validity.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 6; Dec. Dig. § 11.*]

5. TRUSTS (§ 11*)—UNWILLING PARTIES—OPTION.

The court will not force upon unwilling parties a trust which was intended solely for their convenience and vesting at their option, which they do not choose to exercise.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 6; Dec. Dig. § 11.*]

Appeal from Special Term, Montgomery County.

Action by Emily L. Shuler and another, infants, by Mary Shuler, their guardian ad litem, against James M. Shuler and others. Judgment for defendants, and plaintiffs appeal. Reversed, and new trial granted.

See, also, 63 Misc. Rep. 604, 118 N. Y. Supp. 629.

The plaintiffs, the only children and heirs at law of George W. Shuler, bring this action seeking the construction of the will of Hannah Shuler, their grandmother, and asking that they have the income and interest rightfully belonging to them under the will. which is withheld by James M. Shuler, one of the devisees in said will. The four items of the will to be considered, which we may number 3, 4, 5, and 6, are quoted:

(3) "Item. I give and devise unto my executor hereinafter named all the real estate of which I may die seised, in trust, however, for and during the term of the natural life of each of my aforesaid two sons, for the following uses and purposes, to wit: I direct my said executor to allow my sons or either of them to use, occupy and enjoy such portion of my real estate as they or either of them may desire, without paying any rent therefor."

(4) "Item. In case any portion of my said real estate may not be occupied by my said sons or son, then and in that case, I direct my executor to rent the same and to pay the net rent thereof to my said two sons, share and share alike."

(5) "Item. Upon the death of both of my said sons I give and devise my real estate to the issue of my said sons then surviving."

(6) "Item. In the event of either of my said sons leaving no lawful issue him surviving at the time of his death, then and in such case I give and devise my real estate to the issue of the one surviving, share and share alike."

The two sons James M. Shuler and George W. Shuler survived the testatrix. The will was executed in 1889. She died in 1899. George W. Shuler, her son. died June, 1908, aged 52 years, leaving the plaintiffs Emily L. Shuler and William G. Shuler, aged. respectively, eight and four years, his only heirs at law him surviving. It does not appear how old the son James was at the time of his mother's death. but his son was without notice appointed administrator with the will annexed of her will in July, 1908. The executor named in the will never qualified, but died soon after the testatrix. Up to the death of George W. Shuler, the real estate was used, occupied, and managed by the said George and James, the same as if they owned it, and, since the death of George, James has practically used and rented it as owner, except the infant plaintiffs have been permitted to occupy an apartment in one of the buildings. The property is at the corner of Division and Wall streets,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in Amsterdam, upon which is a three-story building, with two stores on Wall street, with two apartments in the rear and over the stores. Next to it, upon the same lot, is a two-family house on Wall street.

Argued before SMITH, P. J., and KELLOGG, COCHRANE, SEWELL, and HOUGHTON, JJ.

Matthew Dwyer, for appellants.

Henry V. Borst, for respondents.

JOHN M. KELLOGG, J. The plaintiffs may maintain this action. Tonnele v. Wetmore, 195 N. Y. 436, 88 N. E. 1068.

From the will itself and the surrounding circumstances we are charged with the duty of ascertaining the intention of the testatrix with reference to the disposition of her property, having in mind that she did not mean to disinherit those fairly entitled to her bounty, or to make an unjust discrimination between them, and that she probably intended to effectually dispose of all her property, and that each item of the will was probably written for a purpose. "A testator's intention is, however, to be collected from the whole will taken together, and not from detached portions alone. * * * And all the parts and provisions of a will are to be construed in relation to each other, and so as, if possible, to form one consistent whole and operate together; and contradictory clauses should, if possible, be reconciled accordingly." Matter of Title G. & T. Co., 195 N. Y. 339, 88 N. E. 375.

The provision of the sixth item that, if either son dies without leaving issue at the time of his death, then and in such case she devised the property to the issue of the survivor, indicates clearly that she had in mind that the will effectually disposed of the interest of either son who died leaving issue, and that the only case in which the issue of the last surviving son was to take all the property under the will was if the other son left no issue surviving at his death.

These views enable us the better to understand the fifth item, and indicate that she had in mind that the property, if managed by the trustee, was not to be taken from him until the death of the longest liver of her sons, but upon the death of each son his issue then surviving him should be entitled to the one-half interest, subject to the terms of the trust. Issue of a son who predeceased the father were disregarded, but those surviving him took his place with reference to the income and received the property subject to the trust. It is not probable that she contemplated that both sons would die at the same time. It was uncertain which would survive the other, and, when upon the death of both she devises the real estate to the issue of her sons then surviving, the provision is fairly satisfied by referring to the issue of the sons who respectively survive the parent; the word "then" meaning at the death of each son. This view is made quite emphatic by the provision of the sixth item, where she speaks of her son not leaving issue surviving at the time of his death. If the contention of the defendants is right, that the issue of the son first deceased have no interest in the property unless they survive the other son, the sixth item of the will would have no force whatever. Giving it full force, and the fifth item like force, it follows that upon the death of a son his issue surviving him is vested with one-half interest in the estate,

subject to the terms of the alleged trust. From the whole will it is evident that she intended to give to neither son any advantage over the other, but both and the issue of each were equal in her mind.

The third and fourth items of the will, read with the other items, indicate clearly that the testatrix intended to dispose of her property in two equal parts, one for the benefit of each son and his issue. He failing in issue, the remainder to go to the issue of the other son. By the third item the estate is given to a trustee for and during the term of the natural life of each of her sons, for the purpose of allowing the sons to take the real estate and manage and control it themselves during their lifetime, and such parts as they do not take and manage the trustee is to rent for them and divide the net rents equally between them. No other duty is cast upon the trustee. No division or apportionment of the property at the termination of the trust is to be made by him, but the will itself disposes of it without reference to the trustee. The trustee is powerless to do any act under the will unless there shall be some of the property which the sons are entitled to use, which they fail to use. It is hardly supposable that the parties to whom the property is given for life would refuse to accept the benefits therefrom, and thereby throw it into the control of the trustee, so that he could manage it and charge them the expense thereof. The trustee was powerless to prevent the sons from occupying or using all the property. Neither could he dictate how the property should be occupied or apportioned between them. The trust was therefore a passive or dry trust without force. Verdin v. Slocum, 71 N. Y. 345; Ullman v. Cameron, 186 N. Y. 339, 78 N. E. 1074, 116 Am. St. Rep. 553. In the Verdin Case the testator devised his estate to his executors in trust to divide the same into three parts, and directed that his son William should be permitted to have and receive the rents, issues, and profits from one part for the term of his natural life, and, after his death, it was given to the heirs at law of said William. It was held that there was nothing for the trustee to do, that the trust was illegal, and that William had a life estate with remainder to his heirs. The case seems to be practically decisive of this case.

In the Ullman Case the trust was to pay the income, and so much of the principal as might be necessary, to the husband during life, and whenever he desired to go in any business or enterprise, and gave notice that he desired any part or all of the trust fund therefor, to pay the same to him. Upon the death of the husband, the remainder was given, and the trustee was to pay over and deliver the same, to parties named. The trust was held void as against creditors of the husband. The court did not determine whether the trust could be sustained as to the other persons named in the will, but suggested that, if any of the property was left at the death of the husband, it would pass to the remaindermen, and the intent of the testatrix be carried out as far as possible.

This trust is ineffectual because the testatrix did not in fact declare it, but left it optional with her sons to declare it or not, as they might desire. They both declared against it, and took and used the property as their own. The issue of the son George and the surviving son James stand before the court ignoring the trust, and asserting their

individual rights to control and use the property. The testatrix evi-·dently did not mean to force upon them a trust except for their convenience, and the court will not force upon unwilling parties a trust which is intended solely for their convenience and rests in their option, which they do not choose to exercise. The possibility that they may change their mind in that respect is not important. The possession and the control of the property was placed in the sons until they elected to turn it over to the trustee. No possible reason can exist why they should prefer to have the property rented by the trustee rather than to control it themselves, except in case of financial trouble they might seek the protection of the trust to the disadvantage of creditors. Apparently the trust was designed for a shield to be used by the sons or not as they might desire. The statute does not permit or recognize a trust for that convenient purpose.

Every legitimate and proper purpose contemplated by the will is. made effective by disregarding the trust and treating the testatrix as. disposing of her property directly. The attempt to furnish the sons a trustee in case they should desire to hide behind him as a shield is ineffectual. The testatrix herself must create the trust, and devolve upon the trustee the performance of certain duties. She cannot name a trustee to perform such trust duties, if any, as the beneficiaries under her will may find it convenient to have so performed.

The majority of the court consider that the plaintiffs own, and are entitled to the possession of, an undivided one-half interest in the property, and that the trust as to the one-half of the property represented by James still continues, from which it results that plaintiffs, upon the death of their father, became the owners and entitled to the possession of an undivided one-half of the entire property, and may have in this action an accounting for rents and profits. The judgment should be reversed and a new trial granted, with costs to the plaintiffs to abide the event.

SEWELL, J., concurs. SMITH, P. J., in the result.

COCHRANE, J. (concurring in reversal). I concur with Mr. Justice KELLOGG in his conclusion that it was the intention of the testatrix to divide her property equally between her two sons. I think, however, that the trust was an active valid trust, and that it continues as to the entire property until the death of James, and that the plaintiffs are entitled not to absolute possession, but only to one-half the net rents of the real property until James shall die. I am also of the opinion that the right of occupancy given by the will is a right to occupy as a home, and that, if James occupies more of the real property than is necessary for living purposes, he should account therefor.

•HOUGHTON, J., concurs.